## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| DEBBIE S. HAYSLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:14-cv-631 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Debbie S. Hayslett ("Hayslett") filed this action challenging the final decision of

the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore

ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").

42 U.S.C. §§ 401–433.  Hayslett alleges that the Administrative Law Judge ("ALJ") erred by (1)

finding that her lymphoma does not meet a listing; (2) failing to give greater weight to the

opinion of her treating physician; (3) improperly assessing her mental impairments; and (4)

improperly discounting her credibility.  I conclude that substantial evidence supports the

Commissioner's decision in all respects.  Accordingly, I **RECOMMEND DENYING** Hayslett's

Motion for Summary Judgment (Dkt. No.14) and **GRANTING** the Commissioner's Motion for

Summary Judgment.  (Dkt. No. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Hayslett failed to demonstrate that she was disabled

under the Act.[1]  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and

alterations omitted).  The final decision of the Commissioner will be affirmed where substantial

evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hayslett's claim has a lengthy procedural history.  Hayslett filed for DIB and

supplemental security income ("SSI") on June 28, 2007, claiming that her disability began on

January 30, 1997 due to lymphoma.[2]  R. 13, 398–404.  Hayslett's SSI application was approved

at the initial level, but her DIB claim was denied at the initial and reconsideration levels of

administrative review.  R. 13, 242.  Hayslett's date last insured was December 31, 2000, thus the

only issue was whether Hayslett was disabled for DIB purposes from her alleged onset date of

January 30, 1997 through December 31, 2000.  R. 16; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B),

(d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

On October 3, 2008, ALJ Robert S. Habermann entered his decision analyzing Hayslett's

claim under the familiar five-step process[3] and denying her claim for benefits.  R. 13–22.  The

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment, which can be expected to result in death or which has lasted
or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability
under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his
ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments
prevent him from engaging in all forms of substantial gainful employment given his age, education, and work
experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Hayslett previously filed applications for DIB and SSI benefits in 1995, and another DIB application in
2006, both of which were denied. R. 246.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence,
whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the
requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

2

Appeals Council denied Hayslett's request for review and she appealed the case to this court, wherein it was remanded to the ALJ for further proceedings at the request of the Commissioner.[4] R. 257–58, 261–62.

On December 8, 2010, ALJ Habermann again denied Hayslett's DIB claim. R. 266–83. Hayslett appealed the decision, and the Appeals Council remanded the case to a different ALJ for a supplemental hearing to consider an additional medical expert opinion obtained after the prior administrative hearing was conducted. R. 295–99. On November 20, 2012, ALJ Jeffrey J. Schueler held a hearing to consider Hayslett's DIB claim. R. 1254–93. Counsel represented Hayslett at the hearing, which included testimony from vocational expert John Newman. On January 24, 2013, ALJ Schueler issued a decision denying the claim. R. 305–21. Hayslett appealed the decision, and the Appeals Council again remanded her case to the ALJ for further consideration of her maximum residual functional capacity ("RFC") and to provide rationale with specific references to support her assessed limitations. R. 324–26.

ALJ Schueler obtained additional evidence relevant to Hayslett's claim, and on October 9, 2013, he again denied Hayslett's claim for benefits.[5] R. 201–20. The ALJ found that Hayslett suffered from the severe impairments of low-grade follicular small cell cleaved lymphocytic lymphoma and depression. R. 205. The ALJ determined that these impairments, either

---

other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] The Order of the Appeals Council indicated that the ALJ's findings were derived in part from evidence that was not admitted into the record, and thus, the administrative record did not permit meaningful judicial review. R. 261.

[5] Hayslett did not request a supplemental hearing; thus, the October 9, 2013 opinion was issued without further hearing on the basis of the evidence of record. R. 202.

3

individually or in combination, did not meet or medically equal a listed impairment. R. 209.

ALJ Schueler concluded that Hayslett retained the RFC to perform sedentary work.[6]

Specifically, he found that Hayslett can lift/carry 20 pounds occasionally and 10 pounds

frequently, can stand/walk for 4 hours and sit for 6 hours in an 8 hour workday, can never climb

ladders, ropes or scaffolds, can occasionally climb ramps or stairs, balance, stoop, kneel, crouch,

or crawl, and can frequently operate foot controls, reach (including overhead reach), handle

objects, finger objects, or feel. R. 213. The ALJ further found that Hayslett is limited to simple,

routine, repetitive tasks, in which she would be off task 10 percent of a normal workday and

would only occasionally interact with the public. Id. The ALJ found that Hayslett would be

unable to perform her past relevant work as a warp tender and order picker/filler, but that other

jobs exist in the economy that she can perform, such as assembler, packer/stuffer and gauger. R.

218–19. Thus, the ALJ concluded that Hayslett was not disabled. R. 220. The Appeals Council

denied Hayslett's request for review, and this appeal followed. R. 184–86.

## ANALYSIS

Hayslett alleges that the ALJ erred by (1) finding that her lymphoma did not meet a

listing; (2) failing to give greater weight to the opinion of her treating physician; (3) improperly

assessing her mental impairments; and (4) improperly discounting her credibility.

### A. Medical History

Hayslett began seeing her treating oncologist, Gerald Schertz, M.D., in April 1995. R.

695. She had been referred to Dr. Schertz after lymph node biopsies performed earlier in the

---

[6] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

month showed follicular small cell cleaved lymphoma.[7] R. 700–701. On physical examination, Hayslett had bilateral inguinal adenopathy (enlarged lymph nodes), with the right side measuring 4 x 3 x 3 centimeters in diameter. R. 696. In his treatment notes, Dr. Schertz indicated that he often recommended a "very conservative approach for this form of low grade lymphoma in patients who do not have bulky disease and are asymptomatic." R. 697. In a follow up appointment in January 1996, Dr. Schertz indicated that Hayslett had "indolent lymphoma, not at the present requiring any therapy." R. 933. Hayslett saw Dr. Schertz again in June and September 1996, complaining of gradually increasing adenopathy and he recommended continued observation. R. 930, 932. At subsequent appointments on February 5, 1997, March 31, 1997, June 30, 1997, October 31, 1997, and March 2, 1998, Dr. Schertz monitored Hayslett's adenopathies, but did not prescribe any treatment. R. 924–928. In April 1998, Dr. Schertz noted that Hayslett's largest lymph node was a right pelvic lymph node measuring 5 cm in diameter, and that she had "minimal symptoms" including urinary frequency, and some discomfort in the right groin when walking. R. 922.

It was not until April 20, 1998, that Dr. Schertz prescribed a low dose of Chlorambucil to treat Hayslett's lymphoma, to be continued until her white blood cell count was 2,500 or greater. R. 921. After six weeks of treatment, an examination on June 1, 1998 showed modest adenopathy with shrinkage in all major areas. R. 929. Hayslett continued on Chlorambucil and, by July 1998, she had shown "dramatic regression" of her adenopathy. R. 918. By September 1998, Dr. Schertz reported "almost complete disappearance of adenopathy with very minimal residual fullness in the right groin area [and] no palpable cervical, supraclavicular or axillary adenopathy and no abdominal masses." R. 916. Dr. Schertz's impression was "excellent clinical

---

[7] Follicular lymphoma is a common type of non-Hodgkin's lymphoma. See http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3643683/

5

response to oral Chlorambucil" and he recommended one additional month of chemotherapy. R. 916. In November 1998, Dr. Schertz noted that Hayslett was in "clinical remission regarding lymphoma." R. 915.

Hayslett followed up with Dr. Schertz approximately one year later, in September 1999. She reported chronic fatigue and stated she was not feeling well enough to return to employment as a waitress. R. 913. However, she also indicated that she had not noticed increasing symptomatic adenopathy, denied profound depressive symptoms, and stated she was no longer taking any medications. Id. Dr. Schertz's examination showed bulky right inguinal adenopathy measuring 3 to 4 centimeters, and a smaller left inguinal adenopathy. Id. Hayslett presented again to Dr. Schertz in November 1999, complaining of diarrhea and abdominal discomfort; upon examination, Dr. Schertz noted that she did "not appear to be acutely ill" and that her "adenopathy is modest and not impressive." R. 1056. During an appointment on October 12, 2000, Hayslett indicated that she had felt worse over the last week; however, a physical examination showed the largest individual lymph node to be approximately 2 ½ centimeters, which was substantially unchanged from her previous visit. R. 1050. A CT scan later in October 2000 showed "no new adenopathy of significance since January with slight decrease in size of left inguinal adenopathy compared to January." R. 1049.

In January 2001, Dr. Schertz noted that Hayslett's adenopathy was "no more pronounced" and his impression was "no sign of recurrent disease." R. 911. In August 2001, eight months after her date last insured expired, Dr. Schertz offered investigational therapy with a clinical trial of Rituxan. R. 1047. In October 2001, Dr. Schertz indicated that Hayslett was

6

"really fully active with almost no symptoms" and estimated her Karnofsky functional status at

90%.[8] R. 1044.

## B. Listing § 13.05(A)(2)

Hayslett argues that the ALJ erred by finding that her lymphoma did not meet listing

§ 13.05(A)(2). In support, Hayslett points to Lee Besen, M.D.'s opinion that she met listing

§ 13.05(A)(2). R. 1112, 1167–1169, 1220.[9]

A "listed impairment" is one considered by the Social Security Administration "to be

severe enough to prevent an individual from doing any gainful activity, regardless of his or her

age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of

impairments automatically result in a finding of disability. The listings are designed to reflect

impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v.

Astrue, No. 3:09-cv-76, 2011 U.S. Dist. LEXIS 11182, at *10, 2011 WL 450426, at *4 (W.D.

Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)). It is well settled that Hayslett must

establish that she meets all of the specified medical criteria of a listing. Sullivan v. Zebley, 493

U.S. 521, 530 (1990).

A claimant meets Listing § 13.05(A)(2) if she has indolent non-Hodgkin's lymphoma

requiring initiation of more than one anti-neoplastic treatment regimen within a consecutive 12-

month period. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.05(A)(2). According to the regulations,

anti-neoplastic therapy "means surgery, radiation, chemotherapy, hormones, immunotherapy, or

---

[8] Karnofsky Performance Status is a widely used method to assess the functional status of a patient. It describes a patient's functional status as a comprehensive 11-point scale correlating to percentage values ranging from 100% (no evidence of disease, no symptoms) to 0% (death). See http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3722041/

[9] In her initial memorandum in support of her motion for summary judgment (Dkt. No. 15), Hayslett incorrectly addressed the prior ALJ opinion dated January 24, 2013. However, Hayslett subsequently filed a supplemental memorandum in support of her motion for summary judgment (Dkt. No. 22) addressing the October 9, 2013 ALJ opinion at issue.

7

bone marrow or stem cell transplantation." Id. § 13.00(B)(3).  The regulations also instruct that

an ALJ must consider the origin of the malignancy; extent of involvement; duration, frequency,

and response to therapy; and effects of any post-therapeutic residuals when evaluating a claimant

under this listing.  Id. § 13.00(B).

The ALJ determined that Hayslett's impairments did not meet listing § 13.05(A)(2)

because Hayslett did not meet the requirement of "more than one anti-neoplastic treatment

regimen within a consecutive 12-month period."  R. 209.  The ALJ afforded great weight to the

opinion offered by Hayslett's treating oncologist Gerald Schertz, M.D., who had treated her

since April 1995.  In a December 4, 2012 letter to Hayslett's counsel, Dr. Schertz stated that

Hayslett's first therapy, Chlorambucil, was initiated on April 20, 1998, and her second therapy,

rituximab, was initiated on August 6, 2001.  R. 1177.  Based on this information, Dr. Schertz

indicated that Hayslett "may not qualify under [] listing [§] 13.05."  Id.  The ALJ also gave great

weight to the opinion of Dr. Alexander who indicated in response to an interrogatory that

Hayslett's lymphoma did not meet or equal the requirements of any medical listing during the

period at issue.  R. 133.  The ALJ stated as follows:

> Dr. Alexander noted that there was no significant progression of the disease from 1997 to
> 2000, except for one chemotherapy treatment regimen from April 1998 to October 1998
> with good response and dramatic reduction of the cancer.  Dr. Alexander identified no
> other such neoplastic treatment before December 2000.  Consistent with Dr. Alexander's
> conclusions, Dr. Schertz described the disease as indolent and identified only symptoms
> of abdominal discomfort without constitutional symptoms or the need for other treatment.
> The opinions of Drs. Alexander and Schertz are accorded great weight on this question of
> whether the claimant's impairment met or equaled listing [§] 13.05.  They are based on a
> review of the medical evidence of record for the adjudication period, and understanding
> of the significance of the April to October 1998 treatment, and – in the case of Dr.
> Schertz – the reduction in the disease by that treatment.  These opinions are thus
> consistent with the facts relevant to the listing criteria.

R. 210.[10]

The ALJ gave limited weight to the opinion of Dr. Besen with respect to the listing issue because "his opinion runs contrary to the listing criteria and to the opinions of the claimant's treating physician and other medical expert." R. 211. On September 20, 2012, Dr. Besen indicated in response to an interrogatory that Hayslett met the elements of listing § 13.05(A)(2). R. 1112. In response to the ALJ's additional requests for clarification, Dr. Besen stated in August 2013 as follows:

> Although the claimant did not require more than one anti-neoplastic treatment within 132 months, the symptom complex during the period is severe. Dr. Schertz (treating oncologist) does note marked symptoms since October 31, 1997 as appropriate to meet Listing 13.05A2 to December 31, 2000.

R. 1220, 211.[11] Beyond pointing out that Dr. Schertz noted "marked symptoms since October 31, 2007," Dr. Besen does not explain his opinion that Hayslett meets listing § 13.05(A)(2), despite failing to satisfy the requirement of more than one anti-neoplastic treatment regimen within a consecutive 12-month period. Accordingly, it was reasonable for the ALJ to accord little weight to his opinion. See Sullivan, 493 U.S. at 530 ("An impairment that manifests only some of [the specified medical criteria of a listing], no matter how severely, does not qualify.")

The ALJ determined that Hayslett's indolent lymphoma did not meet a listing because the impairments were not of listing level severity on or before December 31, 2000. The ALJ observed that:

---

[10] Hayslett argues that Dr. Alexander's opinion should be accorded little weight because "it appears additional medical evidence for the relevant adjudication period was added to the file after Dr. Alexander's review of [Hayslett's] claim). Pl. Supp. Mem. Summ. J. p. 6, Dkt. No. 22. However, there is no indication that the additional records would have changed Dr. Alexander's opinion regarding a listing because Hayslett simply did not undergo more than one anti-neoplastic treatment regimen within a consecutive 12-month period, as is required by listing § 13.05(A)(2).

[11] The interrogatories sent in September 2012 did not clearly indicate that Dr. Besen's opinion regarding a listing should be confined to the period from January 1997 to December 2000. Thus, in compliance with the Appeals Council's June 25, 2013 Order, the subsequent clarification asked Dr. Besen to confine his opinion to the relevant adjudicatory period. R. 211.

9

The medical evidence of record for the applicable period (from the alleged onset date of January 30, 1997, through the date last insured of December 31, 2000) shows only one anti-neoplastic treatment regimen from April to October 1998, with excellent results at retarding the growth of the lymphoma. The next anti-neoplastic regimen was in November 2001, after the date last insured and more than 12 months after the first treatment regimen.

R. 212. The medical evidence simply does not show that Hayslett's impairments met listing 13.05(A)(2) prior to December 31, 2000. Therefore, the ALJ did not err in determining Hayslett's condition did not meet the requirements of the listing and remand is not warranted on this ground.

### C. Opinion of Treating Physician and RFC

Hayslett argues that the ALJ erred by failing to give greater weight to the opinion of her treating physician, Dr. Schertz, regarding her RFC. Dr. Schertz completed a Clinical Assessment of Pain form on July 7, 2010, indicating that Hayslett's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work," that physical activity "increases pain and causes distraction, but does not prevent functioning in work tasks," and that medication affects her work ability such that Hayslett is "restricted from the work place and unable to function at a productive level." R. 1188. Dr. Schertz stated that these restrictions had "existed and persisted" since October 31, 1997.[12] R. 1188. The ALJ gave "some evidentiary weight" to Dr. Schertz's opinion regarding Hayslett's RFC. R. 216.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

---

[12] In response to a request for clarification regarding a pain questionnaire completed in July 2008, where Dr. Schertz indicated that Hayslett's disabling condition had existed since May 2008 (R. 1187), on July 26, 2010, Dr. Schertz stated that the May 2008 date was actually the date of the recurrence, and that Hayslett had been "totally disabled since October 31, 1997." R. 1189.

Case 7:14-cv-00631-MFU-RSB   Document 26   Filed 02/12/16   Page 10 of 19   Pageid#: 1439

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must

give "good reasons" for not affording controlling weight to a treating physician's opinion. 20

C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 U.S. Dist. LEXIS 32627, at * 3,

2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a

treating physician's medical opinion is not deserving of controlling weight, the following factors

must be considered to determine the appropriate weight to which the opinion is entitled: (1) the

length of treatment and frequency of examination; (2) the nature and extent of the treatment

relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with

the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–

(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a

treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 U.S. Dist. LEXIS

142966, at * 30 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) citing Burch v. Apfel, 9 F.

App'x 255, 259 (4th Cir. 2001) (per curiam)

Here, the ALJ specifically addressed the "Clinical Assessment of Pain" forms completed

by Dr. Schertz on July 5, 2008 and July 7, 2010, and found that "Dr. Schertz's opinion is entitled

to some weight as to the effect of pain, but less weight as to other aspects of the claimant's

functional capacity."[13] R. 216–17. R. 216. In support, the ALJ noted that the medical evidence

of record indicates a "stable treatment history" of Hayslett's lymphoma, with an "intense six-

month period of therapy." R. 216. The ALJ also wrote that "pain is [just] one aspect of the

---

[13] The plaintiff argues that the ALJ improperly discounted Dr. Schertz's opinion regarding RFC because it
was not rendered until after Hayslett's date last insured, and emphasizes that the ALJ accepted Dr. Schertz's
opinion regarding whether or not Hayslett's lymphoma met the requirements of a listing, which was also rendered
after Hayslett's date last insured. Hayslett argues that the "ALJ fail[ed] to consider that Dr. Schertz treated [her]
during the relevant time frame (1997-2000) and continued to treat [her] . . . through the time of the hearing and is
well aware of [her] impairments and resulting functional limitations." Pl. Supp. Mem. Summ. J. p. 9, Dkt. No. 22.
However, the ALJ explicitly recognized that Dr. Schertz was Hayslett's treating oncologist who "had access to
treatment records from [the adjudication] period to supplement his own first-hand recollection of [Hayslett's]
treatment history. R. 216.

11

overall functional capacity" and emphasized that Dr. Schertz did not offer specific information as to Hayslett's exertional and non-exertional limitations.[14] R. 216, 218. While the ALJ recognized that "the medical evidence of record supports the conclusion that indolent lymphoma resulted in pain during the applicable period that affected [Hayslett's] ability to concentrate and keep pace with daily activities of work," he concluded that there was no evidence of any specific work-related limitations resulting from her impairments or symptoms. R. 216. Indeed, the issue is not whether Hayslett had physical impairments or experienced symptoms, but whether those impairments and symptoms prevented her from performing the limited range of sedentary jobs identified by the vocational expert. See Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990) ("An individual does not have to be pain-free in order to be found 'not disabled.'").

The regulations empower the ALJ to review the evidence, assign weight to the opinions of reviewing, consulting and treating physicians, and formulate an RFC. 20 C.F.R. §§ 404.1545, 404.1546. An ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). When determining Hayslett's RFC, the ALJ considered all the evidence of record. The ALJ also considered Hayslett's own reports of her activities and the treatment notes from her providers. The RFC determined by the ALJ in this case takes into account all of the evidence cited in the decision. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's determination that Hayslett is capable of a limited range of sedentary work.

---

[14] The ALJ also noted that Dr. Schertz initially opined that the restrictions he identified were present since May 2008, later clarifying that the restrictions had been present since October 31, 1997. R. 216. Though the ALJ conceded that this change might simply be a "refinement" in Dr. Schertz's opinion, he states that, because the change was "at the behest of [Hayslett's] representative . . . it raises a suggestion that the refined opinion may not be the treating source's unedited opinion." Hayslett rejects the ALJ's "insinuation that [she] altered or edited Dr. Schertz's opinion [as] offensive and absurd." Pl. Supp. Mem. Summ. J. p. 8, Dkt. No. 22.

### D. Mental Impairments

Hayslett argues that the ALJ failed to properly address her mental impairments at Steps 4 and 5, as required by Social Security Ruling ("SSR") 96-8P.[15]  See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).  SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC.  Id.; Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).   The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)).

Here, the ALJ's discussion of Hayslett's mental limitations satisfies the requirements of SSR 96-8P.  The ALJ considered both medical and non-medical evidence in assessing Hayslett's RFC and provided the narrative discussion required by the regulations.  The ALJ noted the history of Hayslett's mental symptoms and reviewed Hayslett's mental health treatment, including evidence of psychological treatment in October 1998 and February 1999 that "showed major depressive disorder and GAF scores of 60."[16]  R. 218, 523.

---

[15]  Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[16] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev.2000)

The ALJ also considered Hayslett's testimony as to her daily activities and social interaction, including her testimony at the hearing that she experienced symptoms of depression during the relevant time period and did not want to function, had trouble concentrating and getting along with others, and was easily irritated.[17]  R. 214.  Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence of mental impairment, which he documented through a narrative discussion, the court is capable of meaningfully reviewing the RFC.  See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions).

Hayslett also argues, relying on Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), that the ALJ erred by addressing her moderate difficulties regarding concentration, persistence, or pace by limiting her to simple, routine, repetitive tasks.[18]  In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638

_____

(DSM IV), with 100 being the most high-functioning.   A score of 51–60 suggests moderate symptoms or moderate difficulty in social occupation, or social functioning.  DSM IV.

[17] Hayslett also stated at the hearing that she could not obtain certain medical records regarding her treatment for depression during the relevant period.  R. 1268.

[18] Hayslett also asserts that the court should remand this case because the ALJ failed to explain how he arrived at his finding that Hayslett would be off task for 10 percent of the workday.   However, this argument fails because Hayslett does not point to any specific evidence that would suggest a greater limitation.  See Fisher v. Colvin, No. 14-cv-10100, 2015 U.S. Dist. LEXIS 119610, at * 21-22, 2015 WL 5287120, at *8 (D. Md. Sept. 9, 2015).  While Hayslett generally references Dr. Schertz's opinion that that she was unable to function at a productive level due to her pain and medication, as discussed above, Dr. Schertz did not offer specific information as to Hayslett's exertional and non-exertional limitations.

The Fifth Edition of the DSM published in 2013 discontinued use of the GAF.  Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed., Am. Psychiatric Ass'n 2013).

14

(quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. [19] Id.

However, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Here, the ALJ noted that the state agency concluded that Hayslett was "moderately limited in her ability to understand, remember, and carry out detailed instructions, to maintain concentration, persistence, and pace for extended periods, to perform activities within a schedule and maintain work attendance, to complete a normal workday, to interact with the public, and to accept instructions." R. 218. The ALJ also referenced Hayslett's depressive disorder, and that Dr. Schertz had noted generalized malaise, aches, chronic tiredness, "and not feeling well enough to return to work." Thus, the ALJ limited Hayslett to "simple, routine, and repetitive tasks, to work that would have necessitated only occasional interaction with the public, and to work that would have allowed Hayslett to be off task about 10 percent of a normal workday to deal with . . . depression, fatigue, and pain." R. 218. Significantly, rather than merely finding that Hayslett's moderate difficulties in

---

[19] Thus, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to highlight the evidence of record that supports that conclusion.

concentration, persistence, or pace limited her to work involving simple, routine tasks, the ALJ in his RFC assessment and hypothetical questions to the VE also accounted for Hayslett's concentration and focus problems that would cause her to be off task 10 percent of the workday, which relate to her ability to stay on task.

Unlike the claimant in Mascio, the medical evidence here supports the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Hayslett is capable of performing the basic mental demands of simple, repetitive, routine, unskilled tasks, with only occasional interaction with the public and the ability to be off task 10 percent of the workday. Thus, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

### E. Credibility

Hayslett argues that the ALJ's credibility findings are not supported by substantial evidence because the ALJ did not properly consider her allegations of pain. Hayslett asserts that the activities cited by the ALJ to support his conclusion that Hayslett is less than credible are not activities inconsistent with disability, and were also "performed intermittently and with rest and assistance from [Hayslett's] husband." Pl. Supp. Mem. Summ. J. p. 17, Dkt. No. 22. Hayslett further states that, because she followed the treatment recommended by Dr. Schertz, the ALJ erred in finding that her pain allegations are not fully supported by the evidence.

After a review of Hayslett's treatment records and allegations of disability, the ALJ stated:

> [I] find that [Hayslett's] medically determinable impairments could reasonably be
> expected to cause the alleged symptoms. However, her statements concerning the

16

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 214.  The ALJ outlined his reasons for this determination, including that Hayslett's allegations regarding the severity of her limitations were not fully consistent with the objective medical evidence and her treatment was "essentially routine and conservative in nature, with the exception of the chemotherapy from [] April to October 1998."  Id.  The ALJ also noted that Hayslett had been prescribed medications prior to the date last insured that otherwise appear to have controlled her symptoms.  Id.  The ALJ wrote:

> [Hayslett] reported she lived with her husband, had no trouble caring for herself, did not need reminders, was able to prepare simple meals, did light housework, read, watched television, talked on the telephone, and visited with others on a weekly basis.  [Hayslett] indicated that her husband helped with the laundry, cleaning, shopping, and cooking.  She also stated that she was able to drive depending on the distance and the presence of pain.

R. 215;  see Dolfax v. Astrue, 7:09-cv-67, 2010 U.S. Dist. LEXIS 37181, at *34, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations)  (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).  The fact that Hayslett's husband assisted her with housework does not diminish the ALJ's observation that Hayslett's activities of daily living "appear to have been fairly normal" and do not support the severity of limitations alleged by Hayslett.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work.  See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).  Hayslett's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a

17

whole.  20 C.F.R. §§ 404.1529, 416.929 (2014).  If a claimant's statements are inconsistent with

other evidence, the ALJ may find them less than fully credible and weight them accordingly.

See SSR 96-4P, (July 2, 1996); SSR 96-7P, (July 2, 1996).

In this case, the ALJ found that Hayslett's statements regarding the severity of her

limitations and pain were not wholly credible because they were not supported by the objective

medical evidence, her treatment history, and her daily activities.  R. 214-15.  The ALJ's opinion

includes a detailed consideration of Hayslett's medical history along with Hayslett's own

allegations.  A reviewing court gives great weight to the ALJ's assessment of a claimant's

credibility and should not interfere with that assessment where the evidence in the record

supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)

(finding that because the ALJ had the opportunity to observe the demeanor and to determine the

credibility of the claimant, the ALJ's observations concerning these questions are to be given

great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in

those "exceptional" cases where the determination is unclear, unreasonable, contradicts other

findings of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r

of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir.

1997)).

After a review of the entire record, I find that substantial evidence exists to support the

ALJ's determination that Hayslett's testimony is only partially credible, and that Hayslett is

capable of performing work at the level stated in the ALJ's opinion.

### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered

**AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: February 11, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge