CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 3 0 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DEBBIE S. HAYSLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:14cv00631 |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | By:  Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 12, 2016, recommending that plaintiff Debbie S. Hayslett's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Hayslett filed objections to the report and this matter is now ripe for the court's consideration.

## I.

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "The Commissioner's factual findings must be upheld if they are supported by substantial evidence and were reached through application of the correct legal standard." Casillas v. Astrue, No. 3:09-CV-00076, 2011 WL 450426, at *3 (W.D. Va. Feb. 3, 2011). Evidence is

substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Further, when the court refers a plaintiff's social security disability appeal to the magistrate judge for report and recommendation, the parties are bound by the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Rule 72(b) permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-CV-00088, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08-CV-69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.[1]

In her objections, Hayslett takes the magistrate judge's report section by section and asserts that each of his conclusions is erroneous. Specifically, Hayslett argues that the magistrate judge erred in finding: (1) that the Administrative Law Judge ("ALJ") properly determined that Hayslett's condition did not meet the requirements of listing 13.05(A)(2); (2) that the ALJ correctly concluded that Hayslett is capable of performing sedentary work; (3) that the ALJ's discussion of Hayslett's mental impairments satisfies the requirements of Social Security Ruling ("SSR") 96-8p and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015); and (4) that the ALJ's credibility findings are supported by substantial evidence. In large part, these objections identify no specific error in the report, but rather reiterate arguments Hayslett previously raised in her summary judgment brief. Such general objections do not warrant de novo review. Veney, 539 F. Supp. 2d at 844–46. To the limited extent Hayslett objects to specific findings in the report, the court has reviewed de novo those portions of the report and, for the reasons set forth herein, overrules her objections.

## A.

First, Hayslett targets the listing issue. A "listed impairment" is a medical condition severe enough "to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability." Casillas v. Astrue, No. 3:09-CV-00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011). Importantly, a claimant must show that her alleged

---

[1] Detailed facts about Hayslett's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 26) and in the administrative transcript (ECF No. 9). As such, they will not be repeated in detail here.

impairment meets "all of the specified medical criteria" for a listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

To meet listing § 13.05(A)(2), a claimant must show that she has indolent non-Hodgkin's lymphoma requiring initiation of more than one anti-neoplastic treatment regimen within a period of 12 consecutive months. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.05(A)(2).[2] Anti-neoplastic therapy can include "surgery, radiation, chemotherapy, hormones, immunotherapy, or bone marrow or stem cell transplantation." Id. at § 113.00 (I)(1). The ALJ determined that Hayslett suffered from low-grade follicular small cell cleaved lymphocytic lymphoma, but found that the impairments associated with this condition did not meet or exceed the requirements of listing § 13.05(A)(2) because Hayslett had not received more than one anti-neoplastic treatment regimen within any 12-month period.

To reach this conclusion, the ALJ considered opinions from three medical experts: Dr. Gerald Schertz, Hayslett's treating oncologist, Dr. H.C. Alexander III, a non-examining medical consultant, and Dr. Lee Besen, a second non-examining medical consultant. All three experts agree that Hayslett did not receive more than one anti-neoplastic treatment within a 12-month period. However, they differ in their ultimate conclusion about whether Hayslett satisfies the requirements of listing § 13.05(A)(2).

For example, Dr. Schertz noted in his records that Hayslett received therapy with Chlorambucil for a period of six months, beginning in April 20, 1998. Administrative Transcript, ECF No. 9, at 1177 [hereinafter "R."]. A second therapy with Rituximab was initiated three years

---

[2] At least one version of the regulations appears to use the term "anti-cancer treatment," rather than "anti-neoplastic treatment." However, the parties used the term "anti-neoplastic" in the proceedings below, and the court will adopt that term in this opinion. The meanings are the same. See Anti-Neoplastic, http://www.cancer.gov/publications/dictionaries/cancer-terms, (last accessed March 21, 2016).

later, beginning on August 6, 2001. Id.[3]  In a letter to Hayslett's counsel describing these

treatments, Dr. Schertz stated that "[i]t appears from this information that [Hayslett] may not qualify

under the Social Security listing 13.05." Id.  Similarly, Dr. Alexander concluded that Hayslett did not

meet or equal listing § 13.05(A)(2).  As described in the ALJ's decision, Dr. Alexander stated:

> The abdominal and pelvic CT scans from 02/05/97 through
> 10/10/2000 were read as showing no significant lymph node
> progression. Dr. Schertz's notes from 4/09/95 through 11/28/00
> show brief lower abdominal discomfort but generally not
> constitutional symptoms or need for treatment. There is one six [-]
> month period when the claimant did receive chorambucil [sic] from
> 04/20/98 through 10/98 for enlarged nodes and some associated
> discomfort with a 'dramatic' decrease in the adenopathy. Otherwise
> she received no other treatment prior to December 31, 2000. Dr.
> Schertz usually signed out the claimant's visits as 'indolent
> lymphoma.' Thus the claimant does not meet or equal listing
> 13.05A.2 during the period from diagnosis through December 31,
> 2000.

R. at 210.  The ALJ afforded "great weight" to the opinions of Dr. Schertz and Dr. Alexander,

noting that they were based "on a review of the medical evidence of record for the adjudication

period, an understanding of the significance of the April to October 1998 treatment, and—in the

case of Dr. Schertz—the reduction in the disease by that treatment." Id.

In contrast, Dr. Besen opined that Hayslett meets the requirements of listing § 13.05(A)(2).

Dr. Besen agreed with Dr. Schertz and Dr. Alexander that Hayslett did not receive more than one

anti-neoplastic treatment within any 12-month period. R. at 1220.  Nevertheless, Dr. Besen claimed

Hayslett still meets the listing requirements because her "symptom complex during the period [was]

severe" and because she showed "marked symptoms since October 31, 2007." Id.  Dr. Besen

provided no other explanation for how Hayslett could qualify under listing § 13.05(A)(2) despite not

receiving the required anti-neoplastic treatments.  The ALJ gave "limited weight" to Dr. Besen's

---

[3] The relevant time period for purposes of this disability claim is January 1997 to December 2000. Thus, Hayslett's treatment with Rituximab in 2001 is irrelevant to her qualification under listing § 13.05(A)(2).

opinion, noting that it "runs contrary to the listing criteria and to the opinions of [Hayslett's] treating physician and another medical expert." R. at 211.

The magistrate judge found that the objective medical evidence supported the ALJ's decision to afford greater weight to Dr. Schertz's and Dr. Alexander's opinion, and held that the ALJ did not err in determining that Hayslett's condition did not meet the requirements of listing § 13.05(A)(2). Rep. & Recomm., ECF No. 26, at 9–10. Hayslett takes issue with this finding, arguing (1) that Dr. Schertz's opinion was not definitive and should be afforded little weight, (2) that it is unclear what evidence Dr. Alexander reviewed prior to rendering his opinion, and (3) that Dr. Besen "clearly address[ed]" whether or not Hayslett meets the listing requirements. Pl.'s Obj., ECF No. 27, at 2–3. Hayslett raised identical arguments in her summary judgment brief, Pl.'s Summ. J. Br., ECF No. 22, at 3–6, which were addressed and rejected by the magistrate judge in his report. Rep. & Recomm., ECF No. 26, at 8–10. The court likewise finds no merit to Hayslett's arguments.

First, Dr. Schertz's opinion speaks for itself. Dr. Schertz wrote a letter on December 4, 2012, that described Hayslett's treatment with Chlorambucil and Rituximab while under his care. R. at 1177. He specifically noted the dates of these treatments, with the Rituximab treatment occurring more than three years after the Chlorambucil treatment. Id. Accordingly, Dr. Schertz stated that "[i]t appears from this information that [Hayslett] may not qualify under the Social Security listing 13.05." Id. Hayslett claims this opinion is no opinion at all, but rather a "hesitant statement in which Dr. Schertz is not definitively sure whether or not plaintiff qualifies for benefits under [l]isting 13.05." Pl.'s Obj., ECF No. 27, at 2. Both the magistrate judge and the ALJ disagreed—they understood Dr. Schertz's opinion to state the obvious fact that Hayslett received multiple anti-neoplastic treatments, but did not receive more than one anti-neoplastic treatment within any consecutive 12-month period as required by listing § 13.05(A)(2). The court agrees with the magistrate judge and the ALJ, and further notes that Dr. Schertz's opinion is grounded in the

medical records describing Hayslett's treatment regimen. Accordingly, substantial evidence supports the ALJ's decision to give great weight to Dr. Schertz's opinion on the listing issue.

In addition, the ALJ properly weighed Dr. Alexander's opinion. Hayslett claims Dr. Alexander's opinion was based on an incomplete record, and that it is "unclear what evidence Dr. Alexander reviewed prior to rendering his opinion." Pl.'s Obj., ECF No. 27, at 2. This argument misses the forest for the trees. As Hayslett noted in her summary judgment brief, Dr. Alexander reviewed Hayslett's medical records in 2008 at the behest of the prior ALJ assigned to this case. Pl.'s Summ. J. Br., ECF No. 22, at 5–6. Subsequent to that opinion, additional medical records were added to the administrative file. Id. Thus, it is not necessarily "unclear" what records Dr. Alexander considered before rendering his opinion—at the very least, he reviewed the evidence cited in his report. The more pertinent issue is whether Dr. Alexander's opinion is somehow compromised by the medical records added after he analyzed the record. The magistrate judge concluded that it was not, noting that "there is no indication that the additional records would have changed Dr. Alexander's opinion" regarding the listing requirements. Rep. & Recomm., ECF No. 26, at 9 n.10. The court again agrees.

Hayslett has not identified, either in her summary judgment brief or in her objections to the report and recommendation, how the new medical evidence would change Dr. Alexander's opinion. Nor could the court find any evidence in the record that Hayslett underwent more than one anti-neoplastic treatment regimen within a consecutive 12-month period. Absent evidence that the additional records had any bearing on listing issue, the ALJ did not err in affording great weight to Dr. Alexander's opinion. Cf. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 487–88 (11th Cir. 2015) (construing Social Security Ruling 96-6 to find that the ALJ was not required to obtain new expert reports "merely because new evidence was submitted after the prior medical opinion was rendered").

Finally, the court finds no error in the decision to discount Dr. Besen's medical opinion. Dr. Besen was given two opportunities to explain why Hayslett meets the listing requirements despite not receiving the required number of anti-neoplastic treatments. In fact, the ALJ sent a letter on July 31, 2013, specifically requesting that Dr. Besen clarify his opinion in light of the listing requirements. R. at 211. In his response, Dr. Besen made reference to Hayslett's "severe symptom complex" and "marked symptoms" during the relevant time period, but never revised his finding that Hayslett did not receive more than one anti-neoplastic treatment during any 12-month period. R. at 1220. Nor did Dr. Besen explain how Hayslett could meet listing § 13.05(A)(2) without satisfying its enumerated requirements. As such, it was reasonable for the ALJ to afford little weight Dr. Besen's opinion. The court therefore agrees with the magistrate judge's conclusion that substantial evidence supports the ALJ's decision that Hayslett does not meet the requirements of listing § 13.05(A)(2). Accordingly, Hayslett's objection as to the listing issue is overruled.

**B.**

Hayslett next takes issue with the magistrate judge's conclusion that the ALJ appropriately weighed the opinion of her treating physician, Dr. Schertz, when analyzing her residual functional capacity ("RFC"). The ALJ afforded "some evidentiary weight" to Dr. Schertz's opinions about Hayslett's pain levels and their effect on her ability to work, but ultimately concluded that Hayslett was capable of a limited range of sedentary work during the relevant time period. R. at 216–17. The magistrate judge found that substantial evidence supported this conclusion. Rep. & Recomm., ECF No. 26, at 12. In her objections, Hayslett argues that the ALJ ignored Dr. Schertz's status as her treating oncologist and erred in affording less-than-controlling weight to Dr. Schertz's opinion. Neither argument is persuasive.

Courts must extend additional deference to the opinions of treating physicians, and an ALJ must give such opinions "controlling weight" if the opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). However, the "ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Id. When the ALJ finds it necessary to afford less-than controlling weight to a treating source's opinion, he applies several factors to determine the appropriate weight it deserves, including: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationships; (3) supportability; (4) consistency with the claimant's medical records as a whole; (5) whether the physician is a specialist; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i–ii), §§ (c)(3)–(c)(6); see also Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing the first five factors of the treating physician analysis). Finally, the ALJ must provide "specific reasons for the weight given to the treating source's medical opinions . . . and must be sufficiently specific to make clear to any subsequent reviewers the weight [afforded] to the treating source's medical opinion and reasons for that weight." Fox v. Colvin, No. 14-2237, 2015 WL 9204287, at *5–6 (4th Cir. Dec. 17, 2015) (quoting SSR 96–2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996)).

At the outset, Hayslett argues that the ALJ failed to recognize that Dr. Schertz was her treating oncologist. Pl.'s Obj., ECF No. 27, at 3. She also claims the ALJ disregarded Dr. Schertz's opinion because it was rendered after her date last insured. Id. These same arguments were rejected by the magistrate judge, and are likewise dismissed by this court. Even a cursory review of the ALJ's opinion shows he recognized that Dr. Schertz was Hayslett's treating physician. The ALJ describes Dr. Schertz as the "treating oncologist" at multiple points, and recounts, in detail, the various treatments Hayslett received while under his care. R. at 202, 205–09, 211–12, 215. Further, it is equally clear that the ALJ did not reject Dr. Schertz's medical opinion merely because it was given several years after Hayslett's last insured date. The ALJ stated:

> Dr. Schertz's opinions were prepared a number of years after the relevant adjudication period, which might suggest that the opinions were not based on contemporaneous recollection of the claimant's limitations. However, the opinions were prepared by the claimant's treating oncologist who presumably had access to treatment records from that period to supplement his own first-hand recollection of the claimant's treatment history. On this basis, Dr. Schertz's opinions are entitled to some evidentiary weight.

R. at 216. Plainly, the ALJ recognized that Dr. Schertz was Hayslett's treating physician and analyzed his opinion in light of that fact.

Additionally, the court finds no error in the ALJ's decision to give limited weight to certain aspects of Dr. Schertz's medical opinion. The ALJ calculated Hayslett's RFC with reference to multiple expert medical opinions, including two "Clinical Assessment of Pain" forms completed by Dr. Schertz on July 5, 2008 and July 7, 2010. Both forms are identical, and consist of three multiple-choice questions about Hayslett's pain levels. R. at 1187–89. On each form, Dr. Schertz circled options stating that Hayslett's "[p]ain is . . . present to such an extent as to be distracting to adequate performance of daily activities or work," that "[p]hysical activity, such as walking, standing, and bending . . . increases pain and causes distraction, but does not prevent functioning in work tasks," and that "[m]edication impacts [Hayslett's] work ability to the extent that . . . [she] is restricted from the work place and is unable to function at a productive level." Id.

The ALJ acknowledged these pain assessments, but ultimately found that Dr. Schertz's opinion was "entitled to some weight as to the effect of pain, but less weight as to other aspects of the claimant's functional capacity." R. at 216–17. The ALJ cited a number of factors that justified giving little weight to Dr. Schertz's opinion. First, the ALJ noted that Dr. Schertz's answers on the pain assessment forms conflicted with other medical records and Dr. Schertz's own treatment notes from the relevant time period. R. at 216. This evidence confirms that Hayslett experienced some pain associated with her lymphoma, but also experienced marked improvement with fairly

11

conservative treatment. Such an inconsistency is but one appropriate reason under Johnson and the regulations for the ALJ to discount Dr. Schertz's opinion.

Second, the ALJ noted that Dr. Schertz failed to provide an assessment of Hayslett's exertional and non-exertional limitations. R. at 216. While pain is relevant to a claimant's ability to function, the ALJ explained that it is only "one aspect of the overall functional capacity [analysis]." Id. The ALJ found it significant that Dr. Schertz's pain assessment offered no specific evidence of any work-related limitations caused by Hayslett's condition during the adjudication period at issue. Id. at 216–17.

Finally, the ALJ described an important discrepancy between Dr. Schertz's 2008 and 2010 pain assessment forms. Dr. Schertz initially opined in 2008 that Hayslett's pain limitations were present only since May 2008, well after her last insured date. R. at 216. Two years later, at the behest of plaintiff's counsel, Dr. Schertz revised that opinion to state that Hayslett's limitations had existed since October 31, 1997. Id. While the ALJ did not totally discount Dr. Schertz's explanation for this change, he did note that such a "significant alteration . . . raises a suggestion that the refined opinion may not be the treating source's unedited opinion." Id.

In light of these explanations, the court finds that the ALJ sufficiently justified his decision to give little weight to Dr. Schertz's opinion concerning Hayslett's functional capacity. To be sure, the ALJ did not conduct a point-by-point analysis of the various factors that guide the treating physician analysis. While not best practice, this failing does not require reversal. As the Fourth Circuit noted in Bishop v. Commissioner of Social Security, 583 F. App'x 65 (4th Cir. 2014), an ALJ need not explicitly discuss each factor when he otherwise makes it clear that he considered the factors and provides an appropriate reason to reject the treating physician's opinion. Id. at 67 ("While the ALJ did not explicitly analyze each of the Johnson factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by

12

the medical evidence, which are appropriate reasons under Johnson."). In this case, it is clear that the ALJ considered Dr. Schertz's familiarity with Hayslett, the medical evidence supporting Dr. Schertz's opinion, the opinion's consistency with the record, and other relevant factors when explaining why he afforded little weight to Dr. Schertz's pain assessments.

Moreover, the court's only role on judicial review is to determine whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). As such, a court should "defer to the ALJ's assignments of weight [to expert medical opinions] unless they are not supported by substantial evidence." Dunn v. Colvin, 607 F. App'x 264, 271 (4th Cir. 2015). In weighing Dr. Schertz's opinion on Hayslett's functional limitations, both the ALJ and the magistrate judge reviewed the entirety of the record and found that Dr. Schertz's opinion was inconsistent with the record as a whole. The court finds no error in the manner in which the ALJ and the magistrate judge discharged their duty.

## C.

Hayslett next objects to the magistrate judge's conclusion that the ALJ properly evaluated her mental impairments. Specifically, Hayslett argues that the ALJ did not make detailed, function-by-function findings as required by SSR 96-8p and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and did not account for Hayslett's limitations in concentration, persistence, and pace. The magistrate judge addressed identical SSR 96-8p and Mascio arguments raised by Hayslett in her summary judgment brief, and found no error in the ALJ's analysis. Rep. & Recomm., ECF No. 26, at 14–16. The court concurs, and holds that substantial evidence supports the ALJ's decision in this regard.

SSR 96-8p addresses the RFC assessment, and requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions [listed elsewhere in the regulations]." SSR 96–8p, 1996 WL 362207, at *1 (July 2, 1996). Examples of listed mental functions include a claimant's "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 416.945(b). However, "the ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand." Humphries v. Colvin, No. 3:15-CV-188, 2015 WL 9942619, at *4 (E.D. Va. Dec. 31, 2015), report and recommendation adopted, 2016 WL 356086 (E.D. Va. Jan. 28, 2016). Instead, "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Finally, SSR 96-8p requires that the ALJ "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." 1996 WL 362207, at *7. This narrative should describe the claimant's ability to perform "sustained work activities in an ordinary work setting on a regular and continuing basis[,] . . . the maximum amount of each work-related activity the individual can perform[,] . . . and explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

The magistrate judge cited the requirements of SSR 96-8p in his report, and described how the ALJ satisfied those requirements when analyzing Hayslett's mental limitations:

> The ALJ considered both medical and non-medical evidence in assessing Hayslett's RFC and provided the narrative discussion required by the regulations. The ALJ noted the history of Hayslett's mental symptoms and reviewed Hayslett's mental health treatment,

14

including evidence of psychological treatment in October 1998 and February 1999 that "showed major depressive disorder and GAF scores of 60." R. 218, 523.

The ALJ also considered Hayslett's testimony as to her daily activities and social interaction, including her testimony at the hearing that she experienced symptoms of depression during the relevant time period and did not want to function, had trouble concentrating and getting along with others, and was easily irritated. R. 214. Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence of mental impairment, which he documented through a narrative discussion, the court is capable of meaningfully reviewing the RFC.

Rep. & Recomm., ECF No. 26, at 13–14. As the magistrate judge noted, the ALJ spent approximately five pages of his opinion detailing the relevant medical evidence, including Hayslett's testimony at the hearing, her past psychological treatment, and the observations of Dr. Schertz, Hayslett's treating physician. R. at 213–18. Further, the ALJ described the opinion of a state agency medical consultant who concluded that Hayslett's had "moderately limited" mental functions during the applicable period. Id. at 218. After summarizing this evidence, the ALJ concluded Hayslett had "some reduction in functioning during the applicable adjudication period" which he included in his analysis of Hayslett's RFC. Id.

To the extent the ALJ can be faulted for not engaging in the detailed, function-by-function analysis Hayslett desires, the court does not find remand necessary. As the Fourth Circuit made clear in Mascio, the failure to conduct a function-by-function analysis does not require remand in every case. Instead, remand is the appropriate remedy where the ALJ failed to assess relevant functions or where "other inadequacies" in the opinion "frustrate meaningful review." Mascio, 780 F.3d at 636 (citing Cichocki, 729 F.3d at 177). Neither of these situations is present here. The ALJ discussed, in detail, Hayslett's relevant mental functions, summarized the pertinent medical records, and provided a thorough explanation for why he weighed certain opinions more heavily than others in calculating Hayslett's RFC. As such, the magistrate judge was correct to find that the ALJ

properly analyzed Hayslett's mental limitations and that substantial evidence supported the ALJ's conclusions. Hicklin-Jones v. Colvin, No. 3:14-CV-584, 2015 WL 8958542, at *6 (W.D.N.C. Dec. 15, 2015) (finding remand unnecessary where the ALJ's narrative provided "ample insight into his decisional process"); Humphries v. Colvin, No. 3:15-CV-188, 2015 WL 9942619, at *4 (E.D. Va. Dec. 31, 2015), report and recommendation adopted, 2016 WL 356086 (E.D. Va. Jan. 28, 2016) (finding remand unnecessary where the ALJ addressed "relevant work-related functions" and provided a "sufficient basis to review his conclusions" in the RFC analysis). Accordingly, Hayslett's objections to the ALJ's function-by-function analysis are overruled.

Likewise, the court agrees that the ALJ properly accounted for Hayslett's moderate limitations in concentration, persistence, and pace in the hypothetical questions he posed to the vocational expert at the administrative hearing. In Mascio, the Fourth Circuit joined several other circuits to hold "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The problem in Mascio, however, was the lack of explanation given by the ALJ. The Fourth Circuit stated:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See [Winschel, 631 F.3d] at 1181. But because the ALJ here gave no explanation, a remand is in order.

780 F.3d at 638. Therefore, Mascio emphasizes an ALJ's duty to review the full evidentiary record and explain his reasoning when evaluating a claimant's RFC.

In this case, the ALJ did not account for Hayslett's impairment in concentration, persistence, and pace by simply limiting her to unskilled work, as was the case in Mascio. Rather, the ALJ

incorporated Hayslett's mental impairments into his RFC assessment by limiting Hayslett to "work that would have involved simple, routine, and repetitive tasks, to work that would have necessitated only occasionally interaction with the public, and to work that would have allowed the claimant to be off task about 10 percent of a normal workday to deal with the effective [sic] of depression, fatigue, and pain." R. at 218. This limitation is consistent with the state agency report that Hayslett had moderate limitations in her ability to complete detailed instructions, maintain focus, interact with the public, work within a schedule, and accept guidance from supervisors. It is also consistent with Dr. Schertz's treatment notes from the relevant time period, as well as Hayslett's psychological treatment in October 1998 and February 1999.[4] Thus, the magistrate judge properly concluded:

> Unlike the claimant in Mascio, the medical evidence here supports the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Hayslett is capable of performing the basic mental demands of simple, repetitive, routine, unskilled tasks, with only occasional interaction with the public and the ability to be off task 10 percent of the workday. Thus, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965, 2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Rep. & Recomm., ECF No. 26, at 16.

For her part, Hayslett argues that remand is necessary because the ALJ failed to explain how he decided Hayslett would be off task for 10%, rather than 25%, of the workday. Yet, Hayslett ignores the ALJ's prior discussion of her depression, fatigue, and pain that forms the basis for this conclusion, and the ALJ's explicit finding that the evidence did not support a finding that Hayslett would be off task for 25% of the workday. R. at 218–19. Moreover, as the magistrate judge explained, Hayslett can point to no evidence supporting a greater limitation in her ability to be on task during a normal workday. See Fisher v. Colvin, No. 14-CV-1011, 2015 WL 5287120, at *8 (D.

---

[4] Hayslett stated that she experienced symptoms of depression during the relevant time period, but was unable to obtain medical records of her treatment.

Md. Sept. 9, 2015) (finding remand was unnecessary where the plaintiff could point to no evidence that would suggest she would be off task for more time that the ALJ noted in his opinion). In her objections, Hayslett claims she has evidence she would be off task more than 10% of the day. Specifically, she cites to Dr. Schertz's Clinical Assessment of Pain forms as evidence that she "lacks the capacity to adequately perform work activities or function at a productive level." Pl.'s Obj., ECF No. 27, at 5. For several reasons, the court disagrees.

First, as noted above, Dr. Schertz's assessment forms do not specifically address Hayslett's exertional and non-exertional limitations. Instead, they provide three multiple-choice questions about Hayslett's pain levels, which Dr. Schertz completed as described in Part II.B of this opinion. R. at 1187–88. Dr. Schertz failed to provide additional information about Hayslett's functional limitations, despite receiving requests to supplement his opinion. R. at 216. As such, these assessment forms do not necessarily refute the ALJ's finding that Hayslett would be off task for only 10% of the workday.

Second, it is clear that the ALJ considered and partially dismissed Dr. Schertz's answers in evaluating Hayslett's physical and mental limitations. The ALJ found that Dr. Schertz, in completing the assessment forms, "specifically did not choose responses that would have indicated that the claimant's pain had been incapacitating, would necessitate bed rest, [or] would cause abandonment of tasks related to work or daily living." R. at 215. Further, as described above, the ALJ had concerns with revisions Dr. Schertz made to his original answers and discrepancies between the pain assessment form and other medical records. R. at 215–18. Nevertheless, the ALJ plainly reviewed the form cited by Hayslett in her objections and afforded it the weight he deemed appropriate in determining Hayslett's RFC. As substantial evidence supports the ALJ's conclusions about Hayslett's mental limitations—and because Hayslett has not pointed to any specific evidence suggesting that she would be off task for more than 10% of the workday—the court finds remand

unnecessary. Accordingly. Hayslett's objections to the analysis of her moderate limitations in concentration, persistence, and pace are overruled.

## D.

Finally, Hayslett objects to the magistrate judge's conclusion that the ALJ's credibility determination is supported by substantial evidence. Specifically, Hayslett argues that the ALJ failed to properly consider her allegations of pain, erroneously found that she is able to perform the activities of daily living, and misunderstood how much she relies on her husband to help her with household duties. These arguments again mirror those raised in Hayslett's summary judgment brief, and were dismissed by the magistrate judge in his report. See Pl.'s Summ. J. Br., ECF No. 22, at 16–18; Rep. & Recomm., ECF No. 26, at 16–18; Pl.'s Obj., ECF No. 27, at 6–7.

In any event, it is clear that the ALJ conducted a proper credibility analysis and sufficiently explained his reasons for finding Hayslett's allegations of pain and functional limitations not to be fully credible. For example, the ALJ found:

> [Hayslett's] allegations as to the severity of her limitations are not fully consistent with the objective medical evidence regarding the extent of the limitations resulting from her impairments. The treatment appears to have been essentially routine and conservative in nature, with the exception of the chemotherapy from about April to October 1998. She had been prescribed medications prior to the date last insured that otherwise appears to have effectively controlled her symptoms. The treating physician, Dr. Schertz, did not recommend anything other than essentially conservative treatment during this period and the record does not substantiate any impairment capable of producing functional limitations that would preclude substantial gainful activity.
>
> [Hayslett's] activities of daily living prior to the date of last insured also do not support the severity of limitations alleged by the claimant. Those activities of daily living appear to have been fairly normal. [Hayslett] reported she lived with her husband, had no trouble caring for herself, did not need reminders, was able to prepare simple meals, did light housework, read, watched television, talked on the telephone, and visited with others on a weekly basis. She indicated that her husband helped with laundry, cleaning, shopping, and cooking. She also stated that she was able to drive depending on the

distance and the presence of pain. The engagement in such activities is consistent with the conservative treatment received by [Hayslett] prior to the date last insured and is not fully consistent with a finding of disability.

R. at 214–15. It is for the ALJ to resolve any inconsistency between Hayslett's alleged impairments, her treatment history, and her reported daily activities. Based on his review of the evidence, the ALJ concluded that Hayslett's allegations of pain and severe limitations were not fully consistent with the objective medical evidence of those impairments prior to December 31, 2000. The magistrate judge found these credibility findings were supported by substantial evidence, and the court similarly finds no error in the ALJ's analysis of Hayslett's credibility. In so finding, the court recognizes that credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06-CV-00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). As such, Hayslett's objection is overruled.

### III.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Hayslett properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation is **ADOPTED** in its entirety (ECF No. 26), Hayslett's motion for summary judgment is **DENIED** (ECF No. 14), and the Commissioner's motion for summary judgment is **GRANTED** (ECF No. 18).

An appropriate Order will be entered to that effect.

Entered: 03 - 30 - 2016

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge